Good morning, Your Honors. Tariq Adlai, appearing on behalf of Dannie Farnum. Dannie Farnum was convicted of murder based on the recorded statement of a four-year-old who the district attorney conceded didn't know the difference between a truth and a lie. There are two statements that are involved in this case. One, the recorded statement when she was four years old, and second, her six-year-old trial testimony. Because her trial testimony wasn't even consistent with the physical. The judge conducted a lengthy hearing and concluded that the child was competent to testify. So I don't, whatever you say the district attorney may or may not have conceded, it doesn't seem to me to be relevant. So Your Honor, the hearing was really focused on whether she was competent to testify at six years old. The only inquiry as for her competency and ability to detect, distinguish truth from fantasy at four years old was the recorded statement. I do have some response to the six-year-old statement, or the statement's incompetency when she was six, because she was really much more focused on pleasing and responding in a way that people appreciated. But because the six-year-old trial testimony wasn't really even consistent with the physical evidence, I think the more troublesome one is the recorded statement when she was four years old. But Dowling, the Dowling case says that as long as the jury has a chance to evaluate the problems with testimony and the defendant has the opportunity to rebut evidence, there's, the due process issue is not, not really a problem. It seems to me that you had both here. The jury heard the good and the bad, and you had a chance to challenge Jane Doe's testimony. So how do you get around that? Your Honor, when we're dealing with someone who can't, who can't distinguish between truth and fantasy, the judge has to serve as gatekeeper. Well, but some of her statements were, I mean, plausible, and some of them were implausible. But she did give some plausible statements, and she did answer some of them correctly. I understand she didn't answer all of them correctly, but the judge didn't take this decision lightly. He had a lengthy hearing regarding it, as Judge Rakoff noted. So I'm just trying to figure out what's your best case in light of Dowling. In light of Dowling, the question, I mean, they talk in Dowling about fundamental concepts of justice based on our historic tradition, our long common law tradition. And that includes the competency of a witness. And plausible or consistent doesn't tell us whether or not somebody appreciates the obligation to tell the truth. Because to use perhaps a hackneyed example, a broken clock is perceptive, appears to be accurate twice a day. But it's not accurate. It's a broken clock. It's pure happenstance that it happens to be consistent. And with this young girl who couldn't tell the difference between truth and fantasy, the judge had a hard time. There is an analogy, perhaps inapt, to Daubert and Kumho Tyre. We have fundamental concerns about are we inviting a jury to speculate simply because it's to use magical thinking. Oh, it's consistent. The little girl at some point says some things that are consistent. Even, I guess, even if we agreed with you that there was a problem with the Jane Doe testimony here, the California Court of Appeal determined that even without that testimony there was sufficient evidence to sustain both convictions. So what is your response to that? Sure, sure. So two things. One is sufficiency isn't the standard. Well, I guess there's a few things. First of all, this Court's review under Brecht is independent. And so let's start with that. But also, sufficiency isn't the test for harmless error. When we're dealing with an error, the next question comes to did that error contribute or affect the verdict? Did it have an influence on it? And here, Jane Doe is the only person who claims to be an eyewitness, who claims to be able to say this is how that death happened. She's the only one. There is no other information in the record. But there's circumstantial evidence here. I mean, in a lot of cases, in fact, murder cases, people get convicted on based on circumstantial evidence. Certainly. Certainly. But that doesn't mean, but the circumstances don't indicate who did it in this case. Well, he was the last adult seen with the baby. Because he came, the only thing that is undisputed about him being the last one is that he cried out, help, the baby is not responding. As far as when the child was actually injured and how the child was actually injured, there's no independent corroborated evidence about that. And so, and there's nothing in the record to establish that Danny Farnham is the person who inflicted these injuries. And it's only, it's only the little girl. Well, but don't we have to make a determination whether the California Court of Appeals was unreasonable in its decision? So they, I don't recall that they actually did go to a harmless aspect of it. But sufficiency, simply saying, if we remove this evidence, is there still sufficient evidence? That's not the right standard. It's very clear. And that could have been, it should have been a Chapman standard. But whether it was Chapman or under the State Harmless Error Standard, it would have been a contributing to the verdict. But this is a constitutional issue, and so it should have been Chapman. Or, but even in Brecht, the question still comes to, did it contribute to the verdict? And the State Court did not, did not confront that to the extent they even talked about sufficiency. They talked about things like, well, he was inquisitive, as any, as any person would be, as any adult responsible caretaker would be. He was inquisitive. I had a, just a quick question about Ms. Preston, I believe. There was a plea deal reference that she had pled guilty to something. But it was, what was, can you tell me a little bit more about that? She pled guilty to being an accessory. I'm not sure what more. I believe, I don't remember the exact terms of her sentence. It was accessory to the murder? Yes. And, and she had a cooperation requirement. She had to testify. She had to testify against Danny. And she had, there were some letters in the record. There was a letter introduced in the record, and she acknowledged it, where she had wrote to him apologizing for what she was doing, saying, I'm sorry, I should be there, not you. It's my fault. And this was in, she acknowledged it. She, the, the letters were, were really quite clear. But the, if I could talk about some of the, the factors, I mean, the trial judge said what he focused on in her, in finding her competent was that, was consistency, and as I had mentioned to the broken clock, and, and there was a lack of suggestibility. But if Joe understood her duty to tell the truth, and that was the principal question before the judge, if she understood the duty to tell the truth, any reasonable observer would recognize she, she made some whoppers of a lie. Her mom was dead. That's Shannon Garcia who testified at trial two years later. Her dad, Danny Farnham, that's my client, the petitioner here who's been in, in prison for over a decade, he was dead. She does not possibly appreciate a duty to tell the truth. These are from the, from the four-year-old recorded statements. Her brother Jojo died, and, and, and in terms of... Well, maybe it was just a Freudian wish. Well, the other thing is that there are two Jojos. There are two Jojos. She doesn't have two brothers both named Jojo. She has a sister who, who's the same age as her, but it's not her twin. It's her fantasy life. She can't distinguish. And the judge relies on facts like she, she'll be going to school when she gets her shots. But there's no evidence that she's not going to school, no evidence that she has or hasn't gotten her shots. So you can't credit that. And he says, well, her teacher's going to be named Shelly. But that's the same name she gives to her imaginary baby. We have no idea in the record what her teacher's name is going to be. Are there kids at her school? She says she's been there, I guess. She doesn't know. She likes a cartoon movie, and the judge is impressed. She likes a cartoon movie. She likes SpongeBob and Spider-Man and Dora. She's a four-year-old. That's fine, but that doesn't mean she appreciates the duty to tell the truth. In terms of reliability, Jo was ostensibly in the best possible position to know that JoJo died. Why? Because she said, Doe. Doe said she's the one who killed him. Counsel, what do we do with the fact that Mr. Farnham was the only adult present, admitted being the only adult present, and the medical examiner saying that only an adult could have caused the injuries that resulted in death? What do we do with that information? Isn't that powerful circumstantial evidence of guilt that corroborates the testimony of the minor? That leaves us with two possible suspects, Your Honor, and that's what the trial was about. Two adults were present, and it wasn't necessary. The only thing that puts Danny Farnham as the only person present was Doe's assertion that it happened before Preston returned. But I thought he said his – I thought his statement was he was the only adult present. Didn't he admit to being the only adult present at the time? No, he did not say he was the only one present. He did say – at the way it came out, he did say, you know, I'm the one who found the child and brought it out, and that looks really bad. That makes me look bad. I'd like to say that with regard to Doe's testimony about JoJo's death and JoJo's death, it makes as much sense to credit Doe's statement that Farnham was roughhousing with Baby Doe as it does to credit Doe's statement that she killed JoJo. These are merely consistent, and one has to assume that the prosecutor's theory is correct in order to go to that point. So your point is that there were two adults present, and the other adult may have been the one responsible for the baby's death? I'm sorry to over-speak, Your Honor, but that was the theory of defense. That was the theory of defense at trial. So, yes, I have – I had intended to take three minutes, but I'm down. I'll reserve the rest of my time for rebuttal.  Thank you, Your Honor. May it please the Court, Deputy Attorney General Kristen Ramirez for Respondent. I'll turn first to the witness competency claim. This claim is precluded from federal relief for two reasons. First, witness competency is a matter of state law. That does not raise any cognizable federal claim. Second, the state court's ruling that Doe was competent comports with due process of law. This court cannot second-guess and is bound by the discretion of the state court's determination that Doe was competent and that there was no violation of California Evidence Code. Turning to due process, the trial court held a lengthy hearing on the issue of competency, exploring all of the facts and circumstances surrounding that witness's competency. Specifically, there was a pretrial hearing where the court, again, asked the witness many questions. She said she understood her duty to tell the truth. She said she would not guess if she did not know an answer. And she showed some understanding with the difference between truth and lie. The court had pause when it considered the statements when she was 4 years old, and reasonably so. Although the child could not understand abstract concepts such as death, truth, and lie, ultimately, the court, after considering and exploring all of the facts and circumstances, determined that Doe was still a competent and reliable witness because she was able to accurately relate what she personally observed. Her understanding of her duty to tell the truth is further evidence outside of her ability to define truth and lie. She was able to correct the interviewer when she was 4 years old when the interviewer mistakenly asked, how did your brother, JoJo, die? Doe said, no, not my brother. The interviewer said, okay, how did JoJo die? No, not JoJo, it was baby Doe. This evidences Doe's understanding that she's supposed to tell the interviewer and the court what she saw, what she personally observed. Later, during the pre-trial hearing and during trial, Doe answers multiple times, I don't know, to questions, evidencing or complying with the trial court's instruction that she should not guess if she does not know an answer. Turning to the sufficiency claim, to answer your Honor's question, in the secret recording between Preston and Petitioner, on page 95 of the ER, Preston says, no, I didn't have anything to do with it. They think you had something to do with it. Petitioner says, I, of course, because I was the last one around. He admits that he's going to be blamed because he was the last one with the baby. The evidence was sufficient to convict Petitioner. There was no doubt that the baby died from an intentional attack by an adult, and the evidence showed that that adult was Petitioner. The pathologist testified that the baby suffered an extensive fracture, and he died as a result of abusive trauma to the head. The pathologist testified this could not have happened from an accident, from an injury from a two-year-old or four-year-old child, and it could not have happened from suffocation. Petitioner was the one with the opportunity. He was, again, as he admitted, the last person with the baby during the only time period the death could have happened. Petitioner had the motive. He was dealing with a fussy baby, and Preston testified that she had seen Petitioner in the past have a short fuse with children. And Petitioner evidenced consciousness of guilt with his statements following the baby's death. First, he had no explanation for how the baby could have died. Then later, he came up with multiple implausible theories, including that the baby tripped and hit his head on a sliding glass door, fell in his crib and hit his head on a toy, and that his children hit the baby with a flashlight while swinging it around. Counsel, what's your response to opposing counsel's challenge to the statement that Mr. Farnham was the only adult present at the time? What did the evidence show? The evidence showed that the pathologist testified the baby had to have been violently shaked or had to have had a forceful blow to the head in order to die, and that the baby would have become unconscious within seconds and died shortly thereafter. There is no doubt that Preston, the child's mother, was away at the store for anywhere between 25 to 45 minutes. And when she returned home, she said she did not see the baby alive. All she knew was that the baby was in his crib. Was there any other adult? Did she observe any other adult in the home? No, Your Honor. There was no other adult. Farnham admits in his – excuse me, Petitioner admits in his interview that the only people there on this day were himself, Preston, and his two children. And he also acknowledges that Preston goes to the store for a short period of time. Putting that evidence aside, there's also Doe's testimony. She describes the exact type of attack that the pathologist said had to have caused baby Doe's death, and she identifies the attacker. She says, my dad was mad because the baby was crying. My dad shook the baby, hit his head on the crib, the baby stopped crying, and my dad placed the baby back in his crib. This is consistent with what the pathologist opined happened. The baby had to have died from shaking or a forceful blow and would have become unconscious almost immediately, just as Doe said she personally observed. What's your position? I guess in the reply brief for the first time, the Petitioner is trying to figure out whether DeNovo review applies to the due process question. What's your position on that? It does not, Your Honor. As this Court has previously recognized in Holly versus Yarborough, the Supreme Court has never held that evidence of this type, admitting evidence of this type violates – is in violation of the Supreme Court and violates due process. For that reason an unreasonable application of Supreme Court precedent. And for that reason the AEDPA standard of review applies and not a DeNovo review. To conclude, unless this Court has any further questions, Federal relief is precluded because the State Court's determination and denial of Petitioner's claims was not an unreasonable application and was not contrary to well-established Supreme Court authority. This Court should now rebuttal. So just to jump to the due process – I'm not making a State law claim here. This is a due process question. What the trial judge asked about was limited to State law issues. He didn't address fair trial or due process. State Court of Appeal, same thing. Words due process, fair trial, don't show up. So, Counsel, but we are here on Federal habeas. And so there has to be clearly established Supreme Court authority that supports your position. So I'm curious as to what Supreme Court authority is that you're trying to use in this case. So, Your Honor, my position is that's too narrow a claim, too narrow a way to look at it. But the Supreme Court has told us that in these contexts we are not to define the right in a very general manner. We are supposed to hone it down to what the specific right being asserted is. But then why not narrow it down to what's the rule that says that a 4-year-old who's given the anonymous name Jane Doe is? They have said as a general matter that due process is what Judge Murguia said, the Dowling case. Perry reasserted that, U.S. v. Lovasco. There's quite a plethora of such cases. And if we disagree with you regarding the breadth of your argument, do you lose? No, because still, in addition, the State courts didn't even adjudicate the claim. And that limitation of 2254d-1 only applies when the claim was adjudicated on the merits. I'm sorry, didn't adjudicate it on the merits. And on the merits means assessing the rights and wrongs and essential ---- Sotomayor, let me ask you this. I'm sorry. I apologize. I keep interrupting you. Are you saying that on that theory, it should simply be a remand? No, Your Honor. Well, you're saying they didn't adjudicate something that you say they should have adjudicated. So on that prong, putting aside your due process argument. So in that case, why don't we just send it back? Your Honor, the ---- that has to do with the standard of review. 2254d says if there's been an adjudication on the merits, then 2254d limits the scope of review. If there hasn't been an adjudication on the merits ---- You want us to review a de novo? That is correct. But let me ask you this. If this case turns on whether or not there's a Supreme Court decision addressing the assessment of child competency, do you lose? So, Your Honor, we also have D.C. v. Arms, and I think the other case was the Wheeler case. So those are just ---- Those are both U.S. Supreme Court cases. Addressing child competency assessment? That is correct. That is correct. All right. I'd have to look, but in my brief, it's certainly D.C. v. Arms, and there was a second case, and I think it was Wheeler. Just I wanted to briefly respond. The judge did give Doe credit for correct ---- supposedly correcting the interviewer's statement that ---- or assumption that JoJo had died, even though, of course, that is what Doe said. But what she corrected wasn't that JoJo hadn't died. She didn't say that. She stuck with that. She said JoJo wasn't shaken. Tommy had been shaken. So there was just a different correction. And as far as to how the death happened, the coroner said, no, shaking was not likely the cause of this. There was some sort of forceful trauma. There is no evidence that he was dealing with a fussy baby. There is no evidence at all other than what we have from Doe. And, in fact, what does Doe say? Like a SpongeBob cartoon, the little child was being twirled by his ankles, and he got happy, and Daddy was happy. She is reciting from fantasy. Counsel, I'm looking at D.C. v. Arms. Uh-huh. So would you point me to the language in there that talks about the assessment of a child witness for competency? If I can ---- 107 U.S. 519. Why is this not? I'm sorry. Sometimes paper will be From my reading of this case, it didn't involve a child witness. It was about someone who was alleged to be insane. But perhaps you saw something I haven't seen. Maybe. Oh, and it was. Okay. So I'm sorry. It wasn't child competency. Wheeler is the case that dealt with child competency. Arms dealt more generally with competency. And, again, I ---- Are you saying Wheeler v. United States? Or White v. Wheeler? No, no, no. I think we're Wheeler v. United States. Okay. And then show me the language in there. Go ahead. I think Arms has a better statement because, yeah, I mean, Arms has a statement of competency and that the witness must have sufficient, and I have at pages 521 to 22, the witness must, and I now quote, have sufficient understanding to apprehend the obligation of an oath and be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue. I think that's appreciate the obligations of an oath, apprehend and appreciate the obligations of an oath. When we're dealing with a young child, isn't demeanor a very important part of that determination? The child may respond casually to certain questions, may respond with confusion as to others, but still can demonstrate that he or she knows how to tell the truth when really focused. And that's the kind of thing that the trial judge would be uniquely in a position to assess. That doesn't mean there's no case that the trial judge can't be reversed, but it certainly means that we have to give a lot of deference to the trial judge's determination, don't we? Certainly. But in reviewing a question like this, the trial judge can't merely recite a conclusion, I find her competent. There must be a foundation, and here there's none, especially as to the 4-year-old statement, and there also must be a consideration of the relevant factors, and at least not rejecting or completely ignoring those important factors. And he focused on the irrelevant things of suggestiveness or consistency and ignored the very important things. All right, counsel, we understand your argument. You're way over your time. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Murguia, Rakoff